Court of Appeals Case No. 24-1775

Lower Court Case No. Case No. 22-cv-11127

---

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JALEELAH HASSAN AHMED

*Plaintiff-Appellant*,

V.

HAMTRAMCK PUBLIC SCHOOLS; EVAN MAJOR; SALAH HADWAN; MOORTADHA OBAID; SHOWCAT CHOWDHURY; REGAN WATSON; HAMTRAMCK FEDERATION OF TEACHERS,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Eastern District of Michigan Southern Division

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
DELAPORTE LYNCH, PLLC
*Counsel for Plaintiff-Appellant*
210 State St.
Mason, MI 48854
(517) 999-2626
eric@delaportelynch.com
gina@delaportelynch.com

Anne-Marie Vercruysse Welch (P70035)
CLARK HILL, PLC
*Counsel for School District Defendants-Appellees*
151 S. Old Woodward Ave. Ste, 200
Birmingham, MI 48009
(248) 988-1810
Welch@ClarkHill.com

Stephanie V. Romeo (P83079)
CLARK HILL, PLC
*Counsel for School District*
*Defendants-Appellees*
500 Woodward Ave., Suite 3500
Detroit, MI 48226
(313) 309-4279
sromeo@clarkhill.com

Mark H. Cousens (P12273)
*Counsel for HFT Defendants-Appellees*
26261 Evergreen Road, Suite 110
Southfield, MI 48076
(248) 355-2150
cousens@cousenslaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................I

TABLE OF AUTHORITIES.......................................................................III

INTRODUCTION ........................................................................................ 1

ARGUMENT ................................................................................................ 2

I.  DEFENDANTS-APPELEES' BRIEFS DISTORT THE RECORD, MISREPRESENT PLAINTIFF-APPELLANT'S PRINCIPAL BRIEF, AND ARE RIDDLED WITH INACCURATE AND MISLEADING CHARACTERIZATIONS OF THE PLEADINGS. ................................... 2

II.  DEFENDANTS-APPELLEES MISCONSTRUE THE LOWER COURT'S FAILURE TO ARTICULATE A BASIS FOR DISMISSAL OF PLAINTIFF-APPELLANT'S TORTIOUS INTERFERENCE AND DEFAMATION CLAIMS AS HER "ABANDONMENT" OF THE ISSUE. ......................................................................................................... 4

III.  DEFENDANTS-APPELLEES' SWEEPING AND BASELESS ASSERTION THAT PLAINTIFF-APPELLANT'S PLEADINGS LACK FACTUAL CONTENT IS CONTRARY TO THE RECORD..................... 7

    A.  *Plaintiff-Appellant Sufficiently Pled Disability Discrimination (Counts I-III)*............................................. 9

    B.  *Plaintiff-Appellant Pled Sufficient Facts Establishing an Adverse Employment Action in Support of Her Retaliation, Discrimination, and Due Process Claims (Counts IV-VII, X, XI)*................................................................................. 12

        i.  Retaliation................................................................. 12

        ii.  Discrimination. ......................................................... 15

        iii.  Due Process. ............................................................. 17

            a.  Protected Property Interest. ................................ 17

            b.  Deprivation. ........................................................ 17

        iv.  Qualified Immunity.................................................. 20

IV.  DEFENDANTS-APPELLANTS WEAPONIZE MANUFACTURED FACTUAL DISPUTES TO CHALLENGE PLAINTIFF-APPELLANT'S WELL-PLED AMENDMENTS. ................................................................ 22

V.  DEFENDANTS-APPELLEES' INCORRECTLY CLAIM THAT PLAINTIFF-APPELLANT DID NOT PLEAD SUFFICIENT "COMPARATOR" CONTENT RELATED TO HER FMLA AND TITLE IX CLAIMS. ...................................................................................... 23

VI. DEFENDANTS-APPELLEES WERE ON NOTICE OF PLAINTIFF-APPELLANT'S WELL-PLED CLAIMS FOR INTENTIONAL INTERFERENCE AND DEFAMATION. ............................................... 27

**CONCLUSION** ..................................................................................... **28**

## TABLE OF AUTHORITIES

**FEDERAL STATUTES**

29 U.S.C. § 2612 ................................................................................................ 25

**FEDERAL RULES OF CIVIL PROCEDURE**

FRCP 12(b)(6) ......................................................................................... 5, 11, 23

**U.S. SUPREME COURT CASES**

*City of Tahlequah v. Bond*, 595 U.S. 9 (2021) ............................................... 21
*Cleveland Bd of Ed v Loudermill*, 470 US 532 (1985)................................. 19, 20
*Wolff v. McDonnell*, 418 U.S. 539 (1974)...................................................... 19

**DISTRICT COURT CASES**

*Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997)........................................ 26
*Horton v. 48th Dist. Court*, 446 F. Supp. 2d 756 (E.D. Mich. 2006).................... 18
*Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731 (E.D. Mich. 2017) ..................... 16
*Neuren v. Adduci*, 43 F.3d 1507 (D.C. Cir. 1995)......................................... 26
*Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824 (E.D. Mich. 2017)  23

**SIXTH CIRCUIT COURT CASES**

*Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868 (6th Cir. 2024) ...................... 18
*Brown v. Matauszak*, 415 F. App'x 608 (6th Cir. 2011)................................... 11
*Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247 (6th Cir. 2000)........................ 10
*Byrd v. Ronayne*, 61 F.3d 1026 (1st Cir. 1995)............................................. 26
*Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th
   Cir. 1986).......................................................................................... 6, 7
*Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022)................................... 21
*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998).... 17, 25
*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) .......................... 23
*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556 (6th Cir. 2011)...................... 9
*Hieber v. Oakland Cty.*, 136 F.4th 308 (6th Cir. 2025)................................... 19
*Hopkins v. Canton City Board of Education,* 477 F. App'x 349 (6th Cir. 2012)... 20
*Int'l Metal Trading, Inc. v. City of Romulus*, 438 F. App'x 460 (6th Cir. 2011) .... 21
*Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333 (6th Cir. 2021) ................... 13
*Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012)................................. 9
*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992) ............................... 17, 24
*Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 U.S. App. LEXIS 25001 (6th Cir.
   Sep. 24, 2025)....................................................................................... 27

*Patton v. Aerojet Ordnance Co.*, 765 F.2d 604 (6th Cir. 1985) ............................... 5

*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994) ..................... 26

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599 (6th Cir. 2019) ................. 15

*Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir. 1988) .... 5

*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) ............................................. 13

*United States v. Presto*, 498 F.3d 415 (6th Cir. 2007) ............................................. 5

*Wilson v. Coffeeconnexion Co., Inc.*, No. 24-5804, 2025 U.S. App. LEXIS 7783 (6th Cir. Apr. 2, 2025) ................................................................................. 12

## MICHIGAN COURT OF APPEALS CASES

*Feaheny v. Caldwell*, 175 Mich. App. 291 (1989) ................................................. 28

## INTRODUCTION

Plaintiff-Appellant Jaleelah Ahmed respectfully submits this Reply in Opposition to the Briefs of Defendant-Appellees Hamtramck Federation of Teachers (hereinafter, the "Union" or "Union Defendant-Appellee"), and Defendant-Appellee Hamtramck Public Schools (hereinafter, "HPS" or "Defendant-Appellee HPS"); Evan Major; Salah Hadwan; Moortadha Obaid; Showcat Chowdhury; and Regan Watson (hereinafter, the "Board members" or "Board Defendants-Appellees", and collectively with HPS, the "District" or "District Defendants-Appellees"). At their core, neither submission substantially responds to the fundamental errors of the lower court raised in Mrs. Ahmed's Principal Brief. Defendants-Appellees briefs focus almost exclusively on factual disputes and recitation of elements, rather than meaningfully engaging with the sufficiency of Mrs. Ahmed's pleadings.[1] Where the Union and District do purportedly challenge the pleadings, they do so by stating Mrs.

---

[1] *e.g.*, District Defendants-Appellant's Response Brief, Doc. 47, p. 28, claiming Plaintiff-Appellant suffered no economic damages; p. 29, claiming the lower court did not apply *McDonnell-Douglas*, even though it did (RE# 82 Page ID # 2319; p. 33), arguing Employer's "motive" was not retaliation; p. 33, alleging Plaintiff's "defiance and refusal to cooperate," in comparison to Mr. Nagi; p. 24, claiming Mrs. Ahmed did not identify Niczay as a comparator, despite her specifically discussing her "predecessor" i.e., Niczay; p. 55, claiming the Interim appointments were "temporary;" "originated from her elective medical leave;" and "had no impact on her professional development or career opportunities;" p. 61, purporting Plaintiff was paid and received full benefits throughout her leave; p. 66, claiming Plaintiff returned under a "more favorable contract."); Union Defendants-Appellant's Response Brief, Doc. 45, p. 10, claiming the Union and Board members are "adversaries." P. 15, purporting Plaintiff plead no facts to suggest any authorization, endorsement, or ratification of conduct by the Union; p. 16, claiming Plaintiff-Appellant failed to identify statements underlying defamation claim, p. 20 claiming Plaintiff-Appellant's pleadings were replete with conclusions without a factual basis (without identifying those alleged conclusory statements).

1

Ahmed's statements were "threadbare," "conclusory," or "insufficient," without citing to alleged deficiencies.  Such arguments not only obscure the fundamental issues raised of Mrs. Ahmed's appeal, but they also, respectfully, underscore the lower court's flawed decision.

Through her Reply, Plaintiff-Appellant refocuses and streamlines the issues presented on appeal.

## ARGUMENT

I.    **DEFENDANTS-APPELEES' BRIEFS DISTORT THE RECORD, MISREPRESENT PLAINTIFF-APPELLANT'S PRINCIPAL BRIEF, AND ARE RIDDLED WITH INACCURATE AND MISLEADING CHARACTERIZATIONS OF THE PLEADINGS.**

Defendants-Appellees' briefs are remarkable, not for the substance of their arguments, but rather, for the sheer volume of misstatements.  The Union and District misrepresent the record and argue at length that Plaintiff-Appellant's claims lack factual support, despite sufficient facts being alleged which, under the 12(b)(6) standard, must be accepted as true.[2]  Both briefs are defective because they fail to specifically challenge the *sufficiency* of her allegations, they ignore the breadth of Mrs. Ahmed's extensive factual claims, and present disputes of material fact.

Further, the District's allegation that Mrs. Ahmed "abandoned" her claims for Intentional Interference, Defamation, False Light, Conspiracy, National Origin Discrimination, and ELCRA Retaliation is without merit.  Mrs. Ahmed devoted

---

[2] *See,* fn. 1*, supra.*

2

extensive sections in her Principal Brief to Intentional Interference, Defamation (same elements as False Light), ELCRA Retaliation, and National Origin claims. Doc. 33, Sec. I (Intentional Interference and Defamation), Sec. III. A.-C. (addressing Counts IV-IX, which include Plaintiff-Appellant's ELCRA Retaliation and National Origin claims), Sec. IV (Intentional Interference and Defamation). The District's reliance on such specious arguments underscores the baselessness, and at times, shocking inaccuracy, of their position.

The Union Defendants additionally devote substantial energy to discussing *Feaheny v. Caldwell*, 175 Mich. App. 291 (1989), asserting Plaintiff-Appellant deceived the Court because the case does not involve a labor union. Mrs. Ahmed's use of a "*See*," signal indicates that the authority supports, but does not directly state, the proposition. Bluebook Rule 1.2(a). The absence of a labor union as a party in *Feaheny* is immaterial; the relevant premise is that a defendant, such as a labor union, that engages in wrongful conduct lacking any business justification and is outside the scope of a contract (i.e., a collective bargaining agreement) may be liable for interference. Numerous cases recognize that labor unions can be held liable for such claims. *See, e.g.*, *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866, 873 (6th Cir. 2021); *Lecher-Zapata v. Constr. & Gen. Laborers Union Local 1329*, No. 2:05-CV-294, 2006 U.S. Dist. LEXIS 75767,

3

at *6 (W.D. Mich. Oct. 18, 2006) (**Ex. 1**); *Booth v. Flint Police Officers Ass'n*, No. 21-2960, 2022 U.S. App. LEXIS 15687, at *10 (6th Cir. June 7, 2022) (**Ex. 2**).

Broadly, Defendants-Appellees' arguments rest on distortions rather than reasoning. Defendants-Appellees' persistent mischaracterizations (e.g., claiming Mrs. Ahmed "abandoned" claims which the lower court, respectfully, failed to address in their decision), disregard of the substance of Plaintiff-Appellant's pleadings (e.g., claiming Plaintiff-Appellant's allegations were "threadbare" or "conclusory" without referencing an actual statement, paragraph, or fact), and reliance on plainly untrue assertions (e.g., claiming the lower court did not apply *McDonnel-Douglas*) warrant rejection of their arguments in full.

## II. DEFENDANTS-APPELLEES MISCONSTRUE THE LOWER COURT'S FAILURE TO ARTICULATE A BASIS FOR DISMISSAL OF PLAINTIFF-APPELLANT'S TORTIOUS INTERFERENCE AND DEFAMATION CLAIMS AS HER "ABANDONMENT" OF THE ISSUE.

District Defendants-Appellees claim Plaintiff abandoned these two claims by not allegedly addressing them in her appeal. Not only is it patently untrue that Plaintiff-Appellant abandoned her appeal regarding these claims, but Plaintiff-Appellant expressly dedicated sections of her brief to discussing both the impact of the lower court's failure to address these counts and the merits of her appeal related to stating a claim. Doc. 33, Sec. I and Sec. III. A and B.

More dispositive, however, is that the lower court dismissed the two claims without any explanation, whatsoever.  A review of the Order contains no discussion regarding these two counts, a decision constituting legal error on its face.  *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985) (a court errs when "we cannot determine from the court's order the factual or legal basis for its decision . . . ."); *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988) (affirming *Patton*, 765 F.2d 604); *see, e.g., United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) (a lower court must "make the basis of its decision sufficiently clear on the record to permit 'reasonable appellate review . . . .'").  Plaintiff-Appellant's ability to respond to the lower court's rationale is fundamentally impaired because no rationale is discernible.  For this reason alone, the Appeals Court should reverse the trial court's decision.

Defendant HFT further claims that, notwithstanding Plaintiff-Appellant's abandonment of the claims, Plaintiff-Appellant did not plead sufficient facts, namely, because she did not specifically state the Union "authorized" or "ratified" the actions of the members.  Rule 12(b)(6) does not require Plaintiff-Appellant to plead any magic words, and her statements include descriptions of Union authorized conduct, including, but not limited to:

- Posting information on the Teachers Unions' Facebook account impugning Mrs. Ahmed's professional reputation (RE 1, Page ID # 8, ¶37.A.);.

5

- Providing false information to several local media outlets (RE 1, Page ID # 9, ¶¶37.B.-E.);

- Repeatedly appearing in Mrs. Ahmed's office to demand the HR Director's termination (RE 1, Page ID # 9, ¶37.J.);

- Demanding Teachers Union members be promoted to administrative positions (RE 1, Page ID # 9, ¶37.G.-H.); and

- Not to take any official actions, including making any official statements or official communications, that were not pre-authorized by Mrs. Lynem and Mr. Nagi (RE 1, Page ID # 12, ¶41(2).

Moreover, whether the conduct of union members can be imputed to the Union itself is a "question of fact," not a pleading deficiency. *See*, *Cent. States Se. & Sw. Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1112-13 (6th Cir. 1986). A party may hold a Union responsible for an employee's conduct if the Union has cloaked the employee-member with sufficient authority to create a perception among the rank-and-file that such acts were taken on behalf of the Union, and that the Union did not disavow or repudiate the member's statements or actions. *Id.* Here, the Union did not disavow or repudiate any of the member's statements or actions (Doc. 45, p. 22 stating there is "No Evidence of Union Authorization, Ratification, or Approval"), thereby creating a factual dispute suitable for a jury determination.

At the pleadings stage, Plaintiff-Appellant need only provide Defendants-Appellants with notice of the claims and the grounds on which it rests. *Twombly*, 550 U.S. at 555. Her allegations establish both Union-directed activity and a failure to disavow member conduct, which is sufficient to proceed. *e.g.*, RE1, Page ID # 8-

6

11, ¶37(A)-(M).  In short, Plaintiff-Appellant pled detailed facts describing Union-driven conduct and its failure to disavow member actions.  Whether those actions were ultimately "authorized" or "ratified" is a factual question that cannot be resolved on a motion to dismiss.  *See*, *Cent. States Se. & Sw. Areas Pension Fund*, 799 F.2d t 1112-13.  Defendant Union's attempt to impose an artificially heightened pleading standard should be rejected.

Taken together, the Union and Districts' arguments rest on a warped interpretation of the record and are an attempt to sidestep well-established pleading standards.  Their assertions that Mrs. Ahmed "abandoned" certain claims is refuted clearly through her Principal Brief addressing both the lower court's unexplained dismissal and the factual basis for these claims.  The Union's (and the lower court's) reliance on whether the Union "authorized" certain conduct is similarly unavailing, as Plaintiff-Appellant was only required to allege Union activity, not recite specific words.  Defendants-Appellants arguments are a *post hoc* attempt to fill the void left by the lower court's failure to articulate a rationale for dismissal.

### III.  DEFENDANTS-APPELLEES' SWEEPING AND BASELESS ASSERTION THAT PLAINTIFF-APPELLANT'S PLEADINGS LACK FACTUAL CONTENT IS CONTRARY TO THE RECORD.

Both Defendants-Appellees advance the untenable claim that Plaintiff-Appellant offered no factual basis whatsoever for her claims, a position that collapses under even a superficial reading of the Complaint.  Mrs. Ahmed, for years,

7

has been excluded from her professional duties without notice, without any explanation of the allegations against her, and without any opportunity to respond. No investigation has been completed. She has been replaced by multiple Interim Superintendents. Defendants-Appellees forced Mrs. Ahmed into an indefinite, isolating, and career-ending absence from the District; she is still on this indefinite leave today. Defendants-Appellees unlawful conduct has not only prevented Plaintiff-Appellant from curing or improving upon the Board's retaliatory evaluation but has also damaged her professional reputation and future employment prospects.

Here, Plaintiff's complaint identifies specific conduct and adverse actions taken in furtherance of a common plan among the individual Board members, including direct communications, instructions, and retaliatory measures that occurred both collectively and individually:

- Defendant Evan Major who personally emailed Mrs. Ahmed on December 29, 2021, notifying her she was prohibited from returning to work and placing her on leave pending investigation. That email included numerous directives limiting her speech, communication with staff, and access to school property (RE 68, Page ID # 1820–21, ¶¶ 12, 18).

- The email or its contents were later disseminated publicly (¶ 19), and that other School Board Defendants-Appellees took part in a pattern of retaliation through public statements, termination of access, removal of her personal effects, and the orchestration of a sham evaluation process targeting Mrs. Ahmed after she engaged in protected activities, including FMLA leave (¶¶ 12–34).

Mrs. Ahmed further alleged that individual School Board members improperly used their positions to orchestrate her removal and retaliate against her.

8

RE 55, Page ID.1466, ¶¶120-123. The Sixth Circuit has made clear that individual liability can be sustained where each defendant's actions contributed to the alleged harm. *See, Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564–66 (6th Cir. 2011) (reversing dismissal of individual-capacity claims where the complaint alleged retaliatory acts by multiple school officials based on protected activity). The fact that some decisions were executed through collective Board votes does not preclude liability where individual members were directly involved in the retaliatory decisions. Moreover, a complaint may refer to a group of defendants collectively where the allegations plausibly support the inference that the individuals acted jointly or in concert, particularly where the alleged misconduct arises from official decision-making by a governing body. *See*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012).

### A. Plaintiff-Appellant Sufficiently Pled Disability Discrimination (Counts I-III).

Both Defendants-Appellees argue that Plaintiff-Appellant failed to plead a qualifying disability or allege any adverse employment action taken on that basis. They argue that the Complaint contains only conclusory allegations and lacks facts demonstrating discriminatory intent or causation. The Union further asserts that Plaintiff-Appellant failed to allege any conduct ratified or endorsed by the Union.

In the context of disability discrimination claims under the ADA, Section 504, or Michigan's PWDCRA, a plaintiff need only allege facts supporting a

plausible inference that the plaintiff has an impairment that substantially limits one or more major life activities. *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 253 (6th Cir. 2000). Plaintiff-Appellant need not plead a specific disability, she "must plead facts that make **plausible the inference**" that she is disabled. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020).

Plaintiff stated facts, taken as true, that establish she had a disability:

- Plaintiff-Appellant took a "leave of absence for a serious health condition that made her unable to perform the functions of her position as the School District's Superintendent." RE 68, Page ID # 1831.

- "Mrs. Ahmed's physician advised her, for the sake of her health, to take a medical leave of absence from work." RE 68, Page ID # 1818.

- Mrs. Ahmed's physician stated, "Mrs. Ahmed is a 'qualified individual' with a disability within the meaning of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973." RE 68, Page ID # 1833.

- Plaintiff was diagnosed with "severe major depression, generalized anxiety disorder, and post traumatic stress disorder," and took FMLA-protected leave on the advice of her physician. RE 89, Page ID # 2636.

- Plaintiff provided contemporaneous documentation from her treating therapist describing how these impairments substantially limited major life activities, triggered functional limitations without accommodations, and required workplace supports. *Id*.

These allegations exceed the pleading threshold under Rule 12(b)(6). By demanding medical specificity at the Rule 12(b)(6) motion-to-dismiss stage, the district court imposed an improper *evidentiary* standard. *See*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12 (2002).

10

Even if the district court sought more information on her disability, the correct ruling would have been to allow Plaintiff to amend her complaint to correct the alleged pleading defect. *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) ("[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend."). The *Brown* court highlights that granting leave to amend is the prevailing rationale for curing pleading deficiencies:

> "[I]f a complaint is vulnerable to a motion to dismiss, a district court must first permit the plaintiff to file a curative amendment, even if the plaintiff does not seek leave to amend." *Alston v. Parker*, 363 F.3d 229, 235 (3d. Cir. 2004); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) (observing that, in civil rights cases, "leave to amend must be granted *sua sponte* before dismissing" the complaint); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (internal citations omitted); *Wolf v. Petrock*, 382 F. App'x 674, 677 (10th Cir. 2010).

*Brown*, 415 F. App'x at 615. Both the court and Defendants-Appellees fail to make an argument, supported by law, that Plaintiff-Appellant failed to either meet the necessary pleading standard or that an amendment would have been futile.

11

**B. Plaintiff-Appellant Pled Sufficient Facts Establishing an Adverse Employment Action in Support of Her Retaliation, Discrimination, and Due Process Claims (Counts IV-VII, X, XI).**

### i.    *Retaliation*

Both Defendants-Appellees claim that Plaintiff-Appellant failed to plead facts showing a causal connection between any protected activity and alleged adverse actions. They also claim that Plaintiff-Appellant's retaliation allegations were conclusory and unsupported.

To plead retaliation, Plaintiff-Appellant must "plead facts to support a reasonable inference that there was a causal connection between her protected activity and the adverse employment action taken against her." *Wilson v. Coffeeconnexion Co., Inc.*, No. 24-5804, 2025 U.S. App. LEXIS 7783, at *5 (6th Cir. Apr. 2, 2025) (**Ex. 3**). Although no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004); *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 349 (6th Cir. 2021) ("Temporal proximity between the protected activity and the adverse employment action" can demonstrate causation).

Plaintiff-Appellant engaged in protected activity when advocating for disabled students, taking disability leave, and filing an EEOC complaint. RE1, Page ID # 13-14, ¶¶42-46. Plaintiff pled that **within days** after Plaintiff-Appellant both

12

notified the District of her return from FMLA leave and filed her EEOC complaint against the District Defendants Appellants, the School Board members refused to return Plaintiff-Appellant to her position, then orchestrated the removal of Mrs. Ahmed's personal effects from her office, placed them in a box outside her door, and directed her to pick them up. RE 1, Page ID # 12-13, ¶41, A-E; RE 55, Page ID # 1452, ¶57, E. The act of removing an employee's personal effects from their workspace is wholly indicative of their employer's intent that the employee never return to their position; an act analogous to termination.

Despite Mrs. Ahmed's medical leave, Defendants-Appellees then held an evaluation of Mrs. Ahmed's performance as Superintendent during the 2021-22 school year, at a time well after the deadline for evaluation, simply to negatively evaluate her in retaliation for her protected leave and to create the conditions for her termination under the Revised School Code. RE 55, Page ID # 1456, ¶¶73-74.

While the court recognized the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), which lowered the bar for what constitutes an adverse employment action under Title VII, it held that *Muldrow* did not abrogate Sixth Circuit precedent holding that paid administrative leave, without loss of pay, benefits, or title, is not materially adverse.

The district court's conclusion that Plaintiff suffered no cognizable harm rests on pre-*Muldrow* Sixth Circuit precedent that demanded a materially significant

13

disadvantage—such as lost wages, benefits, or formal demotion—to sustain a claim. However, in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), the Supreme Court expressly rejected that heightened standard. The district court's contrary reasoning applies an outdated and overruled threshold of harm that *Muldrow* has now corrected. The Supreme Court held that Title VII prohibits "discriminatory changes to employment terms and conditions—even if those harms are not significant." *Id*. at 972. Plaintiff's indefinite administrative leave—without an opportunity to return, without any resolution of alleged misconduct, and with a publicly repeated "minimally effective" rating untethered to actual performance— clearly altered the conditions of her employment in ways that affect her future career, professional reputation, and ability to perform the core duties of her role. That suffices to state a claim under *Muldrow*.

The district court correctly acknowledged that Superintendent Ahmed had a constitutionally protected property interest in her continued employment, rooted in her just-cause contract. However, the district court erred in holding that her indefinite administrative leave did not implicate that interest, and that it did not constitute an adverse employment action under federal anti-discrimination statutes. That conclusion relies on outdated precedent and ignores both the real-world impact of administrative leave and the Supreme Court's clarification in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

14

### ii.    Discrimination.

Defendants-Appellees argue that Plaintiff-Appellant's sex discrimination claims fail because she, allegedly, did not identify a similarly situated comparator or plead facts showing disparate treatment.

It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019). To prove discrimination, the plaintiff need only show "some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354-55. She does not need to argue that the harm was "economic" or "tangible;" discriminatory changes to the terms and conditions of employment—such as duties, schedule, or prestige—can be actionable under Title VII even if they do not result in economic loss. *Muldrow*, 601 U.S. 358; *see also*, *Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 749 (E.D. Mich. 2017) ("injury need not be tangible [or economic] to be concrete" and actionable).

Plaintiff's indefinite administrative leave meets this standard. She was barred from performing her duties, from communicating with staff, and from publicly defending herself. Her exclusion was accompanied by a retaliatory and retroactive "minimally effective" rating, manufactured months after the school year ended and

15

untethered to actual performance.  Meanwhile, the District installed a male former superintendent—who was not subject to similar scrutiny—despite Plaintiff's objections and subsequent evidence of his misconduct.  The reputational damage, exclusion from decision-making, and inability to demonstrate continued competence all materially altered the conditions of her employment.  Additionally, the Board's decision to place Plaintiff-Appellant on an indefinite leave prevents Plaintiff-Appellant from improving her, alleged, minimally effective rating; thus, preventing Plaintiff-Appellant from showing improvement (and therefore raising her, alleged, minimally effective rating to avoid the Board's continued rollover of her less-than-ideal performance rating throughout the remainder of her contract). Under *Muldrow*, that is sufficient.

The lower court rejected Plaintiff-Appellant's claim solely because her predecessor had a different contract, ignoring the flexible standard for identifying the "relevant aspects" for comparator liability.  *See, e.g., Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (requiring the court "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employes," and not marry themselves to specific factors identified in *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  Plaintiff-Appellant pled relevant comparator aspects; Plaintiff and her predecessor were appointed superintendents by the same Board,

16

held comparable authority, and took leave during their tenure.  RE 1, Page ID # 11, ¶41(A); re 55.  Yet only Plaintiff-Appellant was prevented from returning.  That disparate treatment—especially where the alleged basis for exclusion remains secret—raises a plausible inference of discriminatory or retaliatory motive.

### *iii.    Due Process.*

District Defendants-Appellees argue that Plaintiff-Appellant lacked a protected property interest due to her alleged non-tenured administrator status, and that, even if she did maintain a property interest, no deprivation occurred.

### a.  Protected Property Interest.

First, Plaintiff-Appellant's contract provided her with a property interest in continued employment; that property interest is not only limited to certain job responsibilities.  Plaintiff-Appellant's contract could only be terminated for "just cause," creating a legitimate expectation of continued employment (the lower court did not dispute this fact).  A public employee whose employment is only terminable for "just cause" has a "protected property interest in continued employment." *Horton v. 48th Dist. Court*, 446 F. Supp. 2d 756, 762 (E.D. Mich. 2006).

### b.  Deprivation.

Second, and most importantly, Plaintiff's paid leave and retention of her title are not the sole marker by which a Court can measure deprivation of her property interest.  "[A] public employer's decision to pay an employee during a suspension

17

does not create an automatic 'safe harbor' from all due-process scrutiny." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 886 (6th Cir. 2024); *see also*, *Gilbert v. Homar*, 520 U.S. 924, 931(1997) ("[w]hatever implication the phrase 'with pay' might have conveyed is far outweighed by the clarity of our precedents which emphasize the flexibility of due process."). While *Muldrow* addresses Title VII, it remains applicable and persuasive in the context of due process, as it requires a case-by-case analysis of the alleged deprivation. *Muldrow* found that courts must consider a broader range of potential deprivations, including, but not limited to, those that are not overt or traditionally viewed as less economic or tangible, yet still legally cognizable. *Muldrow*, 601 U.S. at 374.

Courts must look beyond pay and title to assess whether the employee has been effectively removed from her employment position without the process required by her contract and the Constitution. Here, Plaintiff-Appellant was removed from her position without due process. Plaintiff-Appellant was placed on an indefinite leave of absence (likely until her contract expires or the Board manufactures a reason for Mrs. Ahmed's termination). The leave of absence included a removal from all of her job duties, especially where she was barred from school property and locked out of all communication devices.

Public employees with a property right in continued employment cannot be deprived of their property interest in continued employment without due process of

18

law.  *Cleveland Bd of Ed v Loudermill*, 470 US 532,538 (1985).  "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Thus, due process requires the employee receive notice of the charges, an explanation of the employer's evidence, and an opportunity to respond. *Id*. This pre-termination process need not be elaborate, but it must provide the employee a meaningful opportunity to present their side of the story before being deprived of their property interest.  *Id.*; *see, generally, Hieber v. Oakland Cty.*, 136 F.4th 308 (6th Cir. 2025) (finding that a governmental entity could violate due process by failing to provide appropriate pre-termination due process).[3]

In the instant matter, Plaintiff-Appellant was excluded from her professional duties without notice, without any explanation of the allegations against her, and without any opportunity to respond.  RE1, Page ID # 11-12, ¶41.(A)(1)-(5).  Her office was cleared.  Her authority was stripped.  RE1, Page ID # 12, ¶41.(A)(2).  Her name and photo were removed from public-facing platforms.  RE1, Page ID # 13, ¶41.(2).  Her replacement was installed without input.  RE1, Page ID # 12, ¶41.(A)(1).  Her access to all her computer accounts, records, and other material

---

[3] In *Hopkins v. Canton City Board of Education*, the Sixth Circuit recognized that certain job responsibilities, when tethered to a protected role, can give rise to a property interest. *Hopkins v. Canton City Board of Education,* 477 F. App'x 349, 363 (6th Cir. 2012).  Again, however, this is a factual question inappropriate for resolution on a 12(b)(6) motion to dismiss.

necessary to perform her job was terminated. RE1, Page ID # 12, ¶41.(B). She was silenced under threat of discipline and told not to speak to staff or the public. RE1, Page ID # 12, ¶41.(A)(3)-(4). The District did not simply place her on temporary leave; they functionally terminated Mrs. Ahmed without the procedural protections her just-cause contract and the Constitution guarantee. Mrs. Ahmed's indefinite, interminable leave constituted "termination," it was a deprivation of her protected interest triggering due process protections. *See, Loudermill*, 470 U.S. at 538–39.

Moreover, whether her interminable leave constituted a deprivation of a property interest is a **question of fact** and improper for determination through a 12(b)(6) Motion to Dismiss. *See, e.g.*, *Int'l Metal Trading, Inc. v. City of Romulus*, 438 F. App'x 460, 463 (6th Cir. 2011). *Cunningham v. Blackwell*, 41 F.4th 530, 540 (6th Cir. 2022) (establishing due process as a fact intensive inquiry).

### iv.    *Qualified Immunity.*

District Defendants-Appellants argue qualified immunity bars Plaintiff-Appellant's due process claim. Qualified immunity was not a basis for the Court's dismissal as to Plaintiff-Appellant's due process claim; it was not mentioned whatsoever in its decision.

Moreover, government officials only enjoy qualified immunity if their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah v. Bond*, 595 U.S. 9, 12

20

(2021). The need to provide due process to a public employee who has a property interest in their continued employment is a well-established constitutional right which a reasonable person would know. *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006).

Plaintiff-Appellant is a mandatory MCL 380.1229 administrator. In point of fact, Plaintiff-Appellant and the follow-on Interim Superintendents that replaced her are the only administrators which are mandated under MCL 380.1229. In the context of terminating a MCL 380.1229 administrator (or the equivalency imposed on Plaintiff-Appellant herein), "[a]ny reasonable officer would know that termination from [the superintendent's] job without some measure of [Due Process] was unreasonable.'" *Adamczyk v. Sch. Dist. of the City of Hamtramck Pub. Sch.*, 667 F. Supp. 3d 534, 551 (E.D. Mich. 2023).

As noted above, *Adamczyk* involved Hamtramck Public Schools, the very Defendants-Appellees present in this matter and an adverse job action involving a MCL 380.1229 administrator. The *Adamczyk* court denied qualified immunity. Here, Defendants-Appellees were aware of the need to provide due process and chose to "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bond*, 595 U.S. at 12.

21

## IV.  DEFENDANTS-APPELLEES WEAPONIZE MANUFACTURED FACTUAL DISPUTES TO CHALLENGE PLAINTIFF-APPELLANT'S WELL-PLED AMENDMENTS.

In the district court, Plaintiff-Appellant sought to amend her complaint to include a Family Medical Leave Act (FMLA) claim.  The FMLA entitles eligible employees, like Plaintiff, to take up to 12 weeks of leave per year for qualifying health conditions that prevent them from performing their job. 29 U.S.C. § 2612(a)(1).  Mrs. Ahmed did just that: she went on temporary leave for a documented health condition with the expectation she be returned to her position. Less than five working days after informing the Board she would be returning to work, Defendants-Appellees removed Mrs. Ahmed from her position as Superintendent. RE 1, Page.ID #13, ¶¶42-43.

Defendants' refusal to grant Plaintiff-Appellant's immediate reinstatement following the conclusion of her FMLA leave based on an "investigation" which has yet to occur (and likely never existed), is sufficient to support an inference of retaliation. *See*, *Shrivastava v. RBS Citizens Bank, N.A.*, 227 F. Supp. 3d 824, 833 (E.D. Mich. 2017) (noting that causation must be separated from the employer's proffered justification at the prima facie stage). Whether Defendants-Appellees ultimately prevail on pretext or comparator arguments is a matter for later stages of litigation, not Rule 12(b)(6), because it is highly factually determinative and under Rule 12(b)(6), the Plaintiff-Appellant's factual allegations are assumed to be true.

The plausibility standard "occupies that wide space between 'possibility' and 'probability.'" *Iqbal*, 556 U.S. at 678.  At minimum, Plaintiff-Appellant's proposed allegations support a plausible inference that she was denied reinstatement and subjected to reputational harm and marginalization for taking medical leave.  That is enough to warrant discovery and render her amendment not futile.  *See, HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012).

V.   **DEFENDANTS-APPELLEES' INCORRECTLY CLAIM THAT PLAINTIFF-APPELLANT DID NOT PLEAD SUFFICIENT "COMPARATOR" CONTENT RELATED TO HER FMLA AND TITLE IX CLAIMS.**

District Defendants-Appellees claim, with respect to the FMLA and Title IX claims, that the lower court allegedly properly found that Plaintiff-Appellant's proposed amendments "contradicted" her own pleadings.  Not only did the district court not hold that Plaintiff-Appellant's proposed amendments were contradictory (the Order does not contain such a statement regarding her FMLA and Title IX claims), but her proposed amendments presented new facts that were not available at the time of her Original Complaint and cured alleged deficiencies in that pleading.  The amendment should have been allowed.

District Defendants-Appellees further allege Mrs. Ahmed did not establish Mr. Niczay and Mr. Nagi as comparators.  A Plaintiff-Appellant pursuing a differential-treatment theory of liability must show that the individuals they compare themselves to are "comparators" and must demonstrate that "a similarly situated

23

non-protected person was treated more favorably . . . **or** that the comparator received a different disciplinary outcome when 'the plaintiff and [her] proposed comparator . . . engaged in acts of 'comparable seriousness,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Hunter v. GM LLC*, 807 F. App'x 540, 544 (6th Cir. 2020) (emphasis added).   While comparators must be similarly situated in all relevant aspects, a showing of "exact correlation is not required." *Offutt v. Warren Cty. Reg'l Jail*, 109 F. App'x 740, 742 (6th Cir. 2004); *Ercegovich v. Goodyear Tire & Rubber Co.*,154 F.3d 344, 352 (6th Cir. 1998).

Plaintiff-Appellant's pled sufficient comparator content in her proposed amendments.   Mr. Niczay, a similarly situated non-protected Superintendent engaged in acts of comparable seriousness (i.e., involuntary teacher transfers) and was not disciplined or otherwise retaliated against by the District or Union; in fact, he was praised.  Mr. Nagi, who was appointed by the same governing board as Mrs. Ahmed to be her "replacement," held substantially the same position under the same circumstances as Plaintiff-Appellant, performed the same core responsibilities, and engaged in illegal and incompetent conduct resulting in multiple lawsuits against the District.  RE55, Page ID # 1458-59, ¶¶ 80.A.-G., 81.  Mr. Nagi was investigated for incompetency and illegal activity and was **never suspended.**  *Id*. at ¶81.  Yet only Mrs. Ahmed—a woman of color—was summarily placed on administrative leave, removed from the District website, stripped of her access, and publicly accused of

24

misconduct, despite never having been found guilty of (or even investigated for), any misconduct. RE 1, Page ID # 13, ¶41, C; RE 55, Page ID # 1452, ¶60.   In contrast, when Mr. Nagi faced multiple allegations of wrongdoing, including discrimination and retaliation, the School Board permitted him to remain in his role without indefinite suspension. RE 55, Page ID # 1458, ¶81.

Moreover, a recent decision of this Court highlights the fact that the comparator analysis need not be exact, but instead, need only address the relevant aspects of the employment issue:

> A perfect match between the Plaintiff-Appellant and the comparators across every employment detail is not required; a Plaintiff-Appellant need only show that the relevant aspects of their employment situation were "nearly identical" to those of the comparator. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

*Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 U.S. App. LEXIS 25001, at *15 (6th Cir. Sep. 24, 2025) (**Ex. 4**).  In Mrs. Ahmed's case, the Court improperly seized on the immaterial factual distinctions between the comparators, rather than confining its inquiry to the relevant factors.  The lower court focused upon irrelevant factors, such as the political climate and timing of Mr. Niczay's tenure, in comparison to Mrs. Ahmed's, and asserted that he was not a comparator.  With Mr. Nagi, the lower court made the "factual" determination that Mr. Nagi, the Interim Superintendent that the District immediately appointed to replace Mrs. Ahmed, was not a

25

"comparator" because he purportedly had broad Union support, whereas Mrs. Ahmed did not.[4]

Plaintiff-Appellant effectuated involuntary teacher transfers and did not engage in substantial misconduct. Her male, non-protected comparators in the same position engaged in similar or more severe conduct, yet, faced no discipline and were never placed on indefinite administrative leave. Again, *Mustafa* is instructive in this regard:

> Although some of our cases noted comparator names or job roles to illustrate sufficiency at the pleading stage, we have never required plaintiffs to include such detail. *See e.g.*, *Han*, 541 F. App'x at 627; *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015). What we have required is that the complaint offer some factual content about "the other employees *or* their differing treatment." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (emphasis added); *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 464 (6th Cir. 2015) ("[plaintiff] fails to provide any examples of how [defendant] treated those substantially younger employees more favorably, *or* any facts regarding how those employees are similarly situated." (emphasis added)).

*Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 U.S. App. LEXIS 25001, at *15 (6th Cir. Sep. 24, 2025). At the pleading stage, the Court is not tasked with resolving factual disputes, well-pleaded facts must be accepted as true. Because Mrs. Ahmed

---

[4] We note that broad Union support too often in Michigan goes hand-in-hand with the XY chromosomes of a Superintendent and is irrelevant to the question of whether Mr. Nagi was a comparator for purposes of the allegations contained in Plaintiff-Appellant's Complaint.

26

has alleged that she and her male comparator were similarly situated in all relevant respects, and that she received substantially worse treatment, her claims were adequately pled and should not have been dismissed.

## VI.   DEFENDANTS-APPELLEES WERE ON NOTICE OF PLAINTIFF-APPELLANT'S WELL-PLED CLAIMS FOR INTENTIONAL INTERFERENCE AND DEFAMATION.

Mrs. Ahmed addresses this issue at length in her Principal Brief and in the instant Reply.  Defendants-Appellees were on notice of Mrs. Ahmed's intentional interference and defamation claims.  Mrs. Ahmed alleged that the Union, a non-party to her employment contract, pursued an illegal (prohibited) campaign to remove her from the Superintendency, resulting in profound economic and reputational harm. RE 55, Page ID #1451, ¶55.[5]  Specific defamatory statements by Union leadership were published to third-parties falsely accusing Mrs. Ahmed of being a "liar," "abusive," and causing "mass resignations." RE 55, Page ID #1448–49, ¶¶45-48. The Union's knowingly false statements and deliberate distortions were not mere opinion, were made with reckless disregard for the truth, without first-hand knowledge, and support a plausible inference of reckless disregard for the truth.  *See, e.g., Tomkiewicz v. Detroit News, Inc.,* 246 Mich. App. 662, 635 (2001).

---

[5] At the time teacher placement was a "prohibited" subject of bargaining pursuant to Section 15(3) of the Public Employment Relations Act, MCL 423.215(3).  The *Ionia Public Schools* court found that the term "prohibited," while often compared to an "illegal" subject of bargaining (*see*, Mich. *State AFL-CIO v. Emp't Rels. Comm'n*, 453 Mich. 362 (1996)), in fact went beyond "illegal" to designate a subject that could not be bargained.  *Ionia Pub. Sch. v. Ionia Educ. Ass'n*, 311 Mich. App. 479, 484-85 (2015).  Thus, the Union demands were illegal and could not be bargained.

## CONCLUSION

For the reasons articulated in Plaintiff-Appellant's Principal brief and the instant Reply, Plaintiff-Appellant respectfully asks this Court to reverse the district court's dismissal of her claims and its denial of her motion to amend, and to remand for further proceedings on the merits.

Dated: October 15, 2025          DELAPORTE LYNCH, PLLC

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

28

# CERTIFICATE OF COMPLIANCE

The present brief is double-spaced, in proportionally spaced, Times New Roman, 14-point font. The word count from the Introduction section through end of the Conclusion section contains 6,456 words, in compliance with Federal Rule of Appellate Procedure 32(a)(7)(B). This page and word count calculation was made on Microsoft Word for Mac, Version 16.99.1.

Dated: October 15, 2025                    DELAPORTE LYNCH, PLLC

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

29

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2025, I filed a copy of Plaintiff-Appellant's Brief through the Court's Electronic Case Filing (ECF) System. As such, Notice of this filing will be sent to the counsel of record for all Defendants-Appellees registered with the Court's ECF System.

Dated: October 15, 2025    DELAPORTE LYNCH, PLLC

Eric D. Delaporte (P69673)
Gina E. Goldfaden (P86863)
210 State St., Suite B
Mason, MI 48854
(517) 999-2626
Eric@DelaporteLynch.com
Gina@DelaporteLynch.com

30

**ADDENDUM**

| Record Entry | ECF No. | Description | PageID Range |
|---|---|---|---|
| RE 1 | 1 | Original Complaint | Page ID # 4–14, 15–38 |
| RE 4 | 4 | Motion to Dismiss by HFT | |
| RE 15 | 15 | Plaintiff-Appellant's First Motion to Amend/Correct Complaint | |
| RE 19 | 19 | Motion to Dismiss by All Defendants | |
| RE 30 | 30 | Order Denying Motion to Amend | Page ID # 889–890 |
| RE 37 | 37 | Plaintiff-Appellant's Second Motion to Amend | |
| RE 55 | 55 | Amended Complaint | Page ID # 1441–1460 |
| RE 56 | 56 | Notice of Withdrawal of Second Motion to Amend/Correct | |
| RE 58 | 58 | Motion to Strike Amended Complaint | Page ID # 1498–1499 |
| RE 67 | 67 | Order Granting Defendants' Motion to Strike | Page ID # 1803 |
| RE 68 | 68 | Amended Complaint | Page ID # 1816 |
| RE 69 | 69 | Plaintiff-Appellant's Third Motion to Amend/Correct Complaint | |
| RE 81 | 81 | Opinion and Order Denying HFT Motion to Strike | Page ID # 1459 |
| RE 82 | 82 | Order Denying Motion for Leave to Amend | |
| RE 87 | 87 | Motion to Dismiss by Union Defendants | |
| RE 88 | 88 | Motion to Dismiss by School District Defendants | |
| RE 89 | 89 | Plaintiff's Response to School District Defendants' Motion to Dismiss | |
| RE 89-1 | 89-1 | Exhibit from Plaintiff's Response to Defendants' Motion to Dismiss | Page ID # 2652 |
| RE 90 | 90 | Plaintiff's Response to Union Defendants' Motion to Dismiss | |

2

| RE 92 | 92 | Union Defendants' Reply in Support of Motion to Dismiss | |
|-------|-----|----------------------------------------------------------|---|
| RE 94 | 94 | School District Defendants' Reply in Support of Motion to Dismiss | |
| RE 103 | 103 | Order Granting Union's Motion to Dismiss | |
| RE 105 | 105 | Order Granting School District Defendants' Motion to Dismiss and Denying Motion to Strike as Moot | Page ID # 889–890 |